RENDERED:  NOVEMBER 21, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0867-MR

TOMMY PETREY　　　　　　　　　　　　　　　　　　APPELLANT


APPEAL FROM POWELL CIRCUIT COURT
v.　　　　　　HONORABLE LISA HAYDEN WHISMAN, JUDGE
ACTION NO. 19-CR-00047


COMMONWEALTH OF KENTUCKY　　　　　　　　　　　APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

JONES, A., JUDGE:  Tommy Petrey appeals from an order of the Powell Circuit Court revoking his probated sentence and imposing a five-year term of imprisonment.  He contends that the circuit court lacked jurisdiction to revoke his probation because, in his view, his period of supervision expired on February 9, 2024, based on program credits he earned under KRS[1] 439.268.  He further

---

[1]  Kentucky Revised Statutes.

explains that because the circuit court did not extend his probationary period at his first post-arrest appearance on June 5, 2024, it lost jurisdiction to conduct the subsequent revocation hearing.

We disagree. The record establishes that the Department of Corrections ("DOC") never approved the program credits nor notified the sentencing court of such credits as required by KRS 439.268(3) and Corrections Policies and Procedures ("CPP") 30.4. Petrey's official supervision end date therefore remained August 7, 2024. In addition, even assuming *arguendo* that February 9, 2024, marked the correct discharge date, Petrey's period of probation was tolled by operation of law under KRS 533.040(2) for more than one year due to his earlier absconding and reinstatement.

In short, Petrey's probationary term had not expired when the circuit court entered its July 3, 2024, order of revocation. Accordingly, we affirm.

## I. BACKGROUND

On August 7, 2019, Petrey pleaded guilty in Powell Circuit Court to being a convicted felon in possession of a firearm. The circuit court sentenced him to five years' imprisonment, probated for five years, which established an original end-of-supervision date of August 7, 2024.

Petrey first violated the conditions of his probation in April 2020 when he absconded from supervision. A warrant was issued, and he was arrested

-2-

on March 23, 2021. Following a June 9, 2021, hearing, the circuit court declined to revoke Petrey's probation, instead ordering him to serve sixty days in jail and to complete long-term inpatient drug treatment. The order further directed that Petrey was to remain in custody after serving the sixty-day sanction until a treatment bed became available. Petrey later entered a residential program at ARC-Crown Recovery and successfully completed treatment on April 9, 2022.

On July 6, 2023, Petrey again absconded. The Division of Probation and Parole filed a violation report on December 4, 2023, and the circuit court issued a warrant for Petrey's arrest that same day. He was arrested on May 28, 2024, and appeared before the circuit court on June 5, 2024, with the matter being continued to June 19, 2024. At the June 19th hearing, defense counsel moved to dismiss the violation, arguing that Petrey's completion of treatment entitled him to 180 days of probation-program credit under KRS 439.268 and that, with those credits applied, his supervision had expired on February 9, 2024. Counsel relied on an automatically generated DOC computer entry reflecting the February date.

DOC personnel explained that no special supervision report was sent to the sentencing court as required by KRS 439.268 because Petrey had absconded before the ninety-day notification period, and therefore the DOC had not approved the program credits. DOC further explained that the February date appeared in its electronic system only because of an automatic parameter and that the secretary in

-3-

the probation office should have corrected it back to August 7, 2024. In short, according to DOC, no report was ever transmitted to the circuit court because DOC never approved Petrey's credits.

The circuit court again continued the matter and conducted a final revocation hearing on July 3, 2024. It overruled the jurisdictional motion and, after receiving evidence that Petrey had absconded and tested positive for methamphetamine, revoked his probation, and ordered him to serve his five-year sentence.

This appeal followed.

## II. STANDARD OF REVIEW

Petrey's sole argument on appeal is that the circuit court lacked jurisdiction to revoke his probation. Because the question of a trial court's jurisdiction is one of law, our review is *de novo*. *Hidalgo v. Commonwealth*, 290 S.W.3d 56, 58 (Ky. 2009). *De novo* review is appropriate when the lower court is alleged to have acted outside its jurisdiction because jurisdictional issues turn solely on questions of law rather than factual findings. *Id.*

## III. ANALYSIS

Petrey contends that the circuit court lacked jurisdiction to revoke his probated sentence because his period of supervision expired before the revocation hearing. He argues that by successfully completing an approved inpatient

-4-

treatment program, he earned 180 days of probation-program credit under KRS 439.268, thereby advancing his discharge date from August 7, 2024, to February 9, 2024. Because the circuit court did not extend his probationary period when he appeared after his arrest in June 2024, Petrey maintains that his probation had already terminated, and the court's jurisdiction to revoke was extinguished.

The Commonwealth responds that the circuit court properly exercised jurisdiction because Petrey's supervision period never expired. It emphasizes that the DOC never approved the claimed program credits and never notified the sentencing court as required by KRS 439.268(3) and CPP 30.4. Thus, Petrey's discharge date remained August 7, 2024. The Commonwealth further argues that even if the earlier February date were assumed, Petrey's prior absconding tolled the running of his probation by operation of law under KRS 533.040(2), extending the period well past the date of revocation.

We evaluate these arguments in turn.

**A. *The Warrant Was Proper Under Either Probation Discharge Date*.**

Regardless of whether Petrey's probationary term expired on February 9, 2024, as he claims, or on August 7, 2024, as the circuit court determined, the warrant for his arrest was issued before either date. KRS 533.020(4) provides that a defendant shall be "deemed finally discharged" from probation only if no warrant issued by the court is pending and probation has not been revoked. Thus, the

existence of a pending warrant suspends the running of the probationary period and preserves the court's jurisdiction to act. Our Supreme Court has made clear that this tolling is automatic; it does not depend on any additional order of the court. Once issued, a warrant remains pending until the defendant has been arrested and brought before the court. *Commonwealth v. Tapp*, 497 S.W.3d 239, 241 (Ky. 2016).

If Petrey's probationary period expired in February 2024, as he contends, the circuit court's failure to enter an order extending the probationary period through the July 3 revocation hearing would be fatal to its jurisdiction. As *Tapp* explains, the warrant tolls the expiration of probation only until the defendant's first appearance before the court. *Id.* At that point, the court must enter a written order extending the period of probation to retain authority to proceed to revocation. *Id.* at 242. Here, Petrey appeared on June 5, 2024, and the court—believing his probation had not yet expired—understandably did not enter such an order. If Petrey is correct that his probation was set to expire in February 2024, the absence of an order extending probation through the July 3 revocation hearing would divest the circuit court of jurisdiction. *Id.* We therefore turn to whether Petrey's supervision in fact expired in February 2024, as he claims.

**B.  The DOC Never Approved Petrey's Program Credits.**

Petrey argues that his completion of various programs during his probation entitled him to 180 days of program credit under KRS 439.268, thereby advancing his discharge date to February 9, 2024.  This statute provides, in pertinent part:

> (1) Any supervised individual on probation, probation with an alternative sentence, or conditional discharge shall receive credit on his or her sentence for:
>
> . . .
>
> > (b) Successfully completing a drug treatment program, evidence-based program, or any other promising practice or life-skills program approved by the department, in the amount of not more than ninety (90) days for each program completed.  The department shall determine criteria to establish whether a life-skills or promising-practice program is eligible for probation program credits.  Programs shall demonstrate learning of skills necessary for reintegration into the community to minimize barriers to successful reentry.  Approval of programs shall be subject to review by the department . . . .
>
>  . . .
>
> (2) Probation program credits earned pursuant to subsection (1) of this section shall be applied to reduce the period of probation, probation with an alternative sentence, or conditional discharge ordered by the sentencing court.
>
> (3) No less than ninety (90) days before the projected date of final discharge, the department shall notify the

sentencing court of probation program credits awarded pursuant to this section and that the period of supervision is reduced by the number of days of probation program credits earned by the supervised individual, and the impending discharge from supervision. If the sentencing court, upon receiving such notice, does not take any action pursuant to KRS 533.020, the offender shall be discharged.

(4) The department may promulgate administrative regulations for the awarding of probation program credits.

*Id.*

The DOC has implemented this statute through its CPP 30.4, which sets forth a detailed process for awarding and applying probation-program credits. CPP 30.4 requires that the probation officer prepare a special supervision report— entitled a "Probation Credit Notice"—to the sentencing court at least ninety days before the projected discharge date. That notice must specify the type and amount of credit applied and must bear the validating signatures of both the officer and the district supervisor. The sentencing judge must then decide whether to allow or deny the credit. If the judge takes no action within the prescribed time, the credit is applied, and the offender is discharged at the adjusted end date.

According to the DOC, it did not send the special supervision report to the circuit court because it did not approve Petrey's program credits as he had already absconded when its duty to report was triggered. Whether Petrey's status was a relevant basis for denial is not entirely clear. What is clear, however, is that

-8-

the report was never sent to the circuit court, so the program credit was never awarded.

While the automatic generation in the computer system may have caused Petrey to believe the DOC submitted the report, this belief was erroneous, and was dispelled at the June 19, 2024, hearing at which the DOC acknowledged that it had not notified the circuit court and explained why, in its opinion, Petrey was not eligible for the program credit. This is significant because at that juncture Petrey's dispute was with the DOC, who was not technically a party to his criminal action.

Notably, pursuant to CPP 30.4(II)(H)(1), "[i]f the offender wishes to dispute the eligibility for Probation Program Credit, the offender may pursue the grievance procedure outlined in CPP 27-12-06." It does not appear that Petrey either utilized the grievance procedure or brought a separate declaratory judgment action against the DOC. *See Mason v. Commonwealth*, 331 S.W.3d 610, 629 (Ky. 2011) (declining to order the DOC, which had not been made a party to the appeal and was not properly before the Court, "to either defend its action or to confess error—to take any affirmative action with regard to [the defendant's] offender classification or parole eligibility").

In short, because the DOC never approved the program credit and never sent the Probation Credit Notice to the circuit court for action, KRS 439.268

was not triggered, and Petrey's probation discharge date remained August 7, 2024. Accordingly, the circuit court had jurisdiction to revoke Petrey's probation on July 3, 2024.

**C. *Alternatively, KRS 533.040(2) tolled Petrey's Probation Discharge Date*.**

Even if we assume, for the sake of argument, that February 9, 2024, was the correct probation discharge date rather than August 7, 2024, the circuit court still retained jurisdiction because the tolling provisions of KRS 533.040(2) extended that date well beyond July 3, 2024, when Petrey's probation was revoked. The period between February 9, 2024, and July 3, 2024, is 145 days. As explained below, the time tolled by Petrey's earlier violation and reinstatement far exceeds that period.

KRS 533.040(2) provides:

> If a court, as authorized by law, determines that a defendant violated the conditions of his probation or conditional discharge but reinstates probation or conditional discharge, the period between the date of the violation and the date of restoration of probation or conditional discharge shall not be computed as a part of the period of probation or conditional discharge.

In *Commonwealth v. Dulin*, 427 S.W.3d 170 (Ky. 2014), the Supreme Court granted discretionary review to interpret this statute and ultimately held that it extended Dulin's probationary term by at least six months beyond its original expiration date. *Id.* at 172. Dulin had twice violated probation, but on both

-10-

occasions the circuit court imposed brief jail terms—120 days after the first violation and six months after the second—rather than revoking probation outright. Years later, when the Commonwealth moved to revoke probation after the original five-year term had expired, the Court held that tolling applied automatically under KRS 533.040(2) and that the circuit court retained jurisdiction.

The Court reasoned that because the statute specifies that the time "shall not be computed" as part of the probationary period, the tolling "must . . . be construed to occur by operation of law, without any particular additional actions by the circuit court[.]" *Dulin*, 427 S.W.3d at 174. Continuing probation and reinstating probation were deemed synonymous; once the court ordered Dulin to report back to his probation officer after serving jail time, probation was reinstated. *Id.* at 175. The Court further held that whether mid-probation jail time counts toward the tolling period lies within the trial court's discretion, explaining that trial courts have "great flexibility in managing a mid-probation incarceration or other punitive therapies[.]" *Id.* at 176.

Importantly, the Supreme Court distinguished *Dulin* from *Conrad v. Evridge*, 315 S.W.3d 313 (Ky. 2010). In *Conrad*, the circuit court explicitly ordered that the original probation expiration date would remain unchanged despite a short jail sanction, thereby indicating its intent not to toll the period of probation. In contrast, no such statement appeared in Dulin's orders. The Court explained

that for Dulin's case "to be on point with *Conrad*, when the circuit court ordered the two incarcerations, it would have had to at the same time have reiterated that the probationary expiration date remained [the same]." *Dulin*, 427 S.W.3d at 177. Thus, absent such language, the period of incarceration operates to toll the running of probation. The Court concluded that the Court of Appeals erred in holding otherwise and reinstated the Jefferson Circuit Court's order revoking Dulin's probation. *Id.* at 178.

Applying these principles here, Petrey's first violation clearly tolled the running of his probationary term. He absconded on April 1, 2020, and remained at large until his arrest on March 23, 2021. He stipulated to the violations at a June 9, 2021 hearing, where the circuit court declined to revoke and instead ordered him to serve sixty days in jail, complete inpatient drug treatment, and remain in custody until a treatment bed became available. Petrey successfully completed the program on April 9, 2022. Even under the most conservative calculation, the period between April 1, 2020 (the date of violation) and June 9, 2021 (the date of the hearing) totals approximately 434 days—enough by itself to carry Petrey's probation well past July 3, 2024.

Petrey contends that tolling should not apply because the DOC never issued a recalculated end date nor notified the circuit court of any tolling. But that argument fails under *Dulin*, which held that the statute is self-executing and does

not require further action by either the DOC or the circuit court. As the Court made clear, tolling "occur[s] by operation of law, without any particular additional actions." *Id.* at 174.

Accordingly, even assuming February 9, 2024, was Petrey's correct discharge date, his earlier absconding and reinstatement tolled the running of probation for well over a year. This extended his probationary term beyond the date of revocation, and the circuit court therefore retained jurisdiction to revoke his probation.

## IV. CONCLUSION

For the foregoing reasons, the Powell Circuit Court retained jurisdiction to revoke Petrey's probation, and its July 3, 2024, order is therefore affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jared Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky